IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FLIGHT OPTIONS, LLC, and**
**FLEXJET, LLC**

      Plaintiffs,

v.                                        Civil Action No. 1:16-cv-00732-JG

**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS, LOCAL 1108; INTERNATIONAL**
**BROTHERHOOD OF TEAMSTERS; and**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS, AIRLINE DIVISION,**

      Defendants.

## MOTION TO STAY ORDER (D.E. # 67) PENDING APPEAL

The Court should stay the Opinion and Order (D.E. # 67) issuing its second preliminary injunction and resolving the Union's Motion for Contempt. Because the Sixth Circuit will issue its opinion resolving the Companies' appeal of the Court's first injunction order at any time, the underlying basis for the Court's contempt finding could be overturned. Furthermore, the second injunction order issued at least three advisory opinions regarding (1) the scope and meaning of § 1.5(c)(4) and the 2010 CBA; (2) Flexjet's status as an "Affiliate" subject to the 2010 CBA; and (3) Flexjet's status as Flairjet's parent. These advisory opinions will harm the parties as they proceed to interest arbitration to resolve their § 1.5(c)(4) dispute and could improperly influence the arbitrator. Accordingly, the Court should stay all aspects of its Order pending the Companies' appeal.

## I.    FACTUAL BACKGROUND

Because this Motion is largely limited to legal issues related to Court's Order, the Companies will not summarize the facts and argument which occurred at the hearing on the Union's Motion for Contempt and Second Motion for Preliminary Injunction (D.E. # 47). Nevertheless, the procedural history of the Companies' appeal of the Court's first injunction order (D.E. # 33-1) is relevant. After the parties finished their appellate briefing (which addressed all aspects of the first injunction order), the Sixth Circuit granted the Companies' Motion for Expedited Oral Argument on October 11, 2016 and submitted the case for oral argument as soon as the court's calendar would permit. When oral argument was scheduled for February 1, 2017, the Union moved to postpone it due to a previously-scheduled System Board of Adjustment subcontract arbitration scheduled that day. The Sixth Circuit denied the Union's Motion, and oral argument went forward as scheduled on February 1, 2017. The Sixth Circuit could issue its opinion at any time.

## II.    STANDARD OF REVIEW

When evaluating whether to stay implementation of a preliminary injunction, courts consider the same four factors relevant to their evaluation of a motion for preliminary injunction: (1) likelihood that the parties seeking the stay will prevail on the merits on appeal; (2) likelihood that the moving parties will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). While not prerequisites, the interrelated considerations raised by these factors must be balanced together. *Id.*

2

Although the Sixth Circuit will review the Court's Order on the preliminary injunction for an abuse of discretion, preliminary injunctions are an "extraordinary" form of relief, and the Union had the burden to prove that "the circumstances clearly demand[ed]" injunctive relief. *Service Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 344 (6th Cir. 2012). District courts must make specific findings about each of the four factors in their orders granting preliminary injunction, and if they do not do so, their rulings are subject to reversal on appeal—even under the abuse of discretion standard. *Six Clinics Holding Corp. II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997) ("requir[ing]" a district court "to make specific findings concerning each of the four factors" unless fewer are dispositive of the issue); *United States v. Sch. Dist. of Ferndale, Mich.*, 577 F.2d 1339, 1352 (6th Cir. 1978). Additionally, the Companies refer the Court to the standards of review for civil contempt and bad-faith bargaining briefed in their Response to the Union's Motion for Contempt. D.E. # 54, at 4-7.

## III. LAW AND ARGUMENT

The Court should stay all aspects of the Order because each of the factors in the stay analysis weigh in favor of granting a stay. First, the Companies' appeal is likely to succeed, particularly as the Order issued advisory opinions on matters which are minor disputes over which the Court lacks jurisdiction. Second, the Companies will be irreparably harmed without a stay, as implementing the changes mandated by the Order will be complicated and chaotic—and undoing those changes if the Order is reversed will be even more so. Third, a stay will not harm the Union or the pilots it represents, as all benefit from minimizing disruption to work rules. Fourth, the public interest favors a stay, and on balance, all of the factors weigh in favor of a stay. Accordingly, the Court should stay the Order pending appeal.

### A. The Companies have a substantial likelihood of success on appeal.

The Companies' appeal of the second injunction order will likely be successful for at least four reasons. First, the contempt portion of the Order rests on the Court's previous injunction order, which is currently on appeal and likely to be reversed for the reasons stated in the Companies' appellate briefing. Second, the injunction portion of the Order issued relief not requested by the Union and improperly addressed minor disputes over which the Court specifically noted that it lacked jurisdiction. Third, the Order improperly presumes irreparable harm to the Union and does not address three of the four preliminary injunction factors. Fourth, the Order did not require the Union to post a security bond—which is a jurisdictional requirement for injunctive relief under the Norris-LaGuardia Act—and did not otherwise address whether the Norris-LaGuardia Act barred the injunctive relief sought by the Union. Accordingly, the Companies have a high likelihood of success on appeal.[1]

> 1. <u>The Court's finding that the Companies violated the first preliminary injunction hinges on that order's propriety under the law—which has already been briefed and argued before the Sixth Circuit.</u>

The Companies are likely to prevail on their appeal of the Court's contempt finding for at least three reasons. First, the Companies are likely to prevail on their appeal of the Court's first injunction, which will undermine the basis for the Court's contempt finding stemming from the first injunction order. Second, the Court's contempt finding did not consider whether Flexjet and Flight Options took all reasonable steps to comply with the Court's order. Third, the Court issued an impermissible advisory opinion regarding the Companies' interpretation of its Order. For

---

[1] As in its previous injunction Order, the Court repeatedly referred to all four Counter-Defendants as "Carriers" and extended its rulings to each of the Counter-Defendants. But as the Companies have repeatedly explained, only Flexjet and Flight Options are carriers as defined by the RLA. *See, e.g.*, Resp. to First Mot. for Prelim. Inj., D.E. # 13-1, at 8 n.1. Thus, the Court's use of "Carriers" to define the four Counter-Defendants improperly extends its rulings to companies which do not employ the pilots represented by the Union and to which the RLA and any of its attendant obligations do not apply. This improper nomenclature provides an independent basis for the Sixth Circuit to reverse the second injunction order.

these reasons, the Companies are likely to prevail on their appeal of the Court's contempt finding.

>
> (a) *Whether Flexjet and Flight Options had the right to offer the VSP and whether they had an obligation to bargain with the Union over it are issues which will be resolved in the fully-briefed appeal.*

Whether the Companies have a duty to bargain under Section 6 regarding the VSP controls whether any Counter-Defendant breached that duty: if the duty does not exist due to a lack of status quo for Flexjet (or if the parties' disagreement regarding the VSP is a minor dispute), the Court's finding that the Companies did not bargain in good faith (D.E. # 67, at 9-11) will likely be overturned on appeal. *See* Companies' Opening Brief at 41-45 (Ex. 1); Companies' Reply Brief at 18-25 (Ex. 2). Indeed, the Union admitted that Flexjet has no status quo obligations under the RLA—which means that it was free to unilaterally offer the VSP and to determine its contents. *See id.* And whether Flight Options had the right to offer the VSP in the first place is a minor dispute. *See id.* Rather than restate the arguments already made on appeal, the Companies incorporate their appellate briefing by reference, assert that they have a likelihood of success on appeal for the reasons stated in that briefing, and anticipate that the Sixth Circuit will reverse the Court's previous injunction. Because the Court's contempt finding depends on the previous injunction's validity, the contempt finding based on that injunction would also be nullified.

>
> (b) *The evidence at the hearing did not clearly and convincingly show that the Companies failed to make reasonable efforts to reach an agreement.*

The parties' failure to agree about the terms of the VSP is not clear and convincing evidence that the Companies failed to bargain in good faith by failing to make reasonable efforts to reach an agreement. The Order itself acknowledges that the parties had not reached an

5

agreement "on all substantive aspects" of the VSP because some aspects "would be resolved by the lawyers later." D.E. # 67, at 10-11. Accordingly, the Court did not identify clear and convincing evidence demonstrating that the parties had reached any integrated agreement—much less an agreement which "good faith bargaining require[d]" them to memorialize in a final written agreement. *Id.* at 11.

Moreover, the Court misapplied Supreme Court precedent regarding the scope of the parties' obligation to bargain in good faith. *Id.* (citing *Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 574 (1971) (stating that good-faith bargaining in RLA Section 6 disputes requires "management and labor 'to exert every reasonable effort to make and maintain agreements'")). Thus, the standard for whether the parties bargained in good faith is whether they make *reasonable efforts* to reach an agreement, not whether they reached an agreement about which they were bargaining. *See id.* Because the RLA allows parties to bargain to impasse, the parties' inability to reach a full agreement regarding the VSP is not bad-faith bargaining and did not violate the first injunction order. *See Int'l Bhd. of Teamsters v. S.W. Airlines*, 875 F.2d 1129, 1133-34 (5th Cir. 1989) (*en banc*).

Furthermore, the Order impermissibly weighed the parties' positions regarding the dismissal of the VSP claim to decide which proposals and terms were included in the parties' purported VSP agreement and found bad-faith bargaining based on the parties' failure to reach an integrated agreement—not the parties' failure to make reasonable efforts to reach that agreement. Order, D.E. # 67, at 11; *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 299-300 (E.D.N.Y. 2012) (declining to assess the parties' substantive bargaining proposals and weigh their reasonableness); *Air Line Pilots Ass'n Int'l v. Spirit Airlines, Inc.*, No. 08-13785, 2009 WL 1803236, at *11-13, 15 (E.D. Mich. June 18, 2009)

(holding that the Union's allegations that the company reneged on "every single tentative agreement" reached during the first two years of bargaining did not state a bad-faith bargaining claim). And the National Mediation Board has not found an impasse, which weighs against finding bad-faith bargaining. *See id.* Accordingly, the Order's combined misapplication of the scope of the RLA's bargaining requirement and misinterpretation of the parties' positions regarding the VSP point to the Companies' strong likelihood of success on appeal.

> (c)  *The Court found that the Companies violated the first injunction even after the Union withdrew its request for such a finding.*

The Court found that the Companies violated a portion of its injunction related to pilots who had accepted the VSP and separated from employment with Flexjet and Flight Options before the original injunction order issued despite noting that the Union "withdrew any request for a remedy regarding pilots who had already accepted the VSP." D.E. # 67, at 9.[2] This finding is an impermissible advisory opinion because the Court commented on and resolved (but did not issue injunctive relief) regarding Flight Options and Flexjet's selected method for rescinding the VSP. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (noting that "moot questions require no answer"). Nonetheless, the Order found that the Companies violated the injunction by not rescinding the VSP as to pilots who had already accepted it and later characterized the "issue [a]s moot." Order, D.E. # 67, at 8-9. Accordingly, the Companies anticipate that the Sixth Circuit will also reverse this advisory ruling on the parties' positions.

> 2.  <u>The second injunction entered by the Court (D.E. # 67) improperly comments on and decides minor disputes and goes beyond the relief sought by the Union.</u>

---

[2] Notably, the Court did not address how the Companies could violate an injunction which it issued in violation of the Norris-LaGuardia Act's security bond requirement. *See* Resp., D.E. # 54, at 8. The Companies maintain that the Court's injunction did not take effect until November 3, 2016, when the Union posted a security bond. *Id.*

The Sixth Circuit will likely reverse the injunction portion of the Order for at least three reasons. First, the Order improperly extended the 2010 CBA to Flexjet by incorrectly concluding that Flexjet is an "Affiliate" of Flight Options. Second, the Order discusses and interprets § 1.5(c)(4)—calling it "broad" to the point that it would "include almost all issues that could be addressed in RLA Section 6 negotiations"—while also recognizing that much of its analysis "deals with interpreting the 2010 CBA, a minor dispute over which the arbitrator has jurisdiction." Third, the Court erred in finding that the parties do not have to resolve § 1.5(c)(4) disputes before continuing bargaining under Section 6 to reach a fully-amended CBA.

> (a) *The Court improperly concluded that "Flexjet" is an "Affiliate" as defined in the 2010 CBA and found that Flexjet is the parent of Flairjet.*

The Court's conclusion that Flexjet is an "Affiliate" of Flight Options is incorrect under the law, unnecessary to the Court's resolution of the Union's Motion, and contrary to positions *the Union* has taken on appeal—the same position the Companies have maintained throughout this litigation. *See, e.g.*, Companies' Appellate Reply at 21 (Ex. 2). The 2010 CBA does not control Flexjet pilots at this point and does not govern the Companies' "relationship with the post-merger class of both Flight Options and Flexjet pilots." *Compare* Order, D.E. # 67, at 13 *with* the Union's January 29, 2017 Letter (Ex. 3) ("To be clear, his ruling does not mean that all of the provisions of the 2010 CBA currently apply to Flexjet pilots. For example, the 2010 CBA pay rates, benefits and working conditions do not apply at Flexjet. Rather, the judge reaffirmed . . . that the 2010 CBA applies to Flexjet pilots to the extent that it provides the process to bring both pilot groups under a joint CBA that covers both the Flight Options and Flexjet pilots in all respects."); *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 402-03 (1942); *Int'l Bhd. of Teamsters v. N. Am. Airlines*, 518 F.3d 1052, 1053 (9th Cir. 2008); *Aircraft Mechanics Fraternal*

8

*Ass'n v. Atl. Coast Airlines*, 55 F.3d 90, 93 (2d Cir. 1995); *Virgin Atl. AirwTays v. NMB*, 956 F.2d 1245, 1253 (2d Cir. 1992); *Reg'l Airline Pilots Ass'n v. Wings W. Airlines*, 915 F.2d 1399, 1403 (9th Cir. 1990); *Int'l Ass'n of Machinists v. Trans World Airlines*, 839 F.2d 809, 812-14 (D.C. Cir. 1988).

Although the Court notes that the Companies "do not seem to dispute this particular point," the Court actually elicited the following statement from the Union's counsel, who correctly stated the Companies' position (which is consistent with the Companies' position on appeal):

> In terms of your reading of the contract one of the things that the employer has said with respect to the VSP, Voluntary Separation Program, and our claims under that, is there is no status quo at Flexjet, *meaning they don't have a contract*, and so forth."

Transcript, D.E. # 68, at 16:7-10. When the Companies' counsel attempted to explain the Companies' position on this point, the Court asked different follow-up questions, and the point was not addressed or resolved during the rest of the hearing. *Id.* at 16:4-18:8. Thus, neither the Companies' briefing nor their counsel's argument at the hearing supports the Order's finding that the Companies did not dispute that Flexjet is an "Affiliate" under the 2010 CBA. *See also* Order, D.E. # 67, at 13 n.72 (outlining the Companies' opposition to the Court's conclusion that Flexjet is an "Affiliate" and summarizing part of the Companies' argument why § 1.5(c)(4) demonstrates that Flexjet pilots are not folded into the 2010 CBA). This dicta constitutes an advisory opinion and also resolves minor disputes over which the Court lacks jurisdiction: the interpretation of the 2010 CBA and whether Flexjet could be an Affiliate. Order, D.E. # 67, at 15 n.80 ("The Court does not have jurisdiction to interpret the 2010 CBA, a minor dispute."); *Assoc. Gen. Contractors of Am. v. City of Columbus*, 172 F.3d 411, 421 (6th Cir. 1999) ("The Supreme

Court has made it clear that requests for advisory opinions from federal courts are not justiciable" because they may "affect our judgment at some future time.").

For the same reason, the Court erred by concluding that Flexjet is the parent of Flairjet. Order, D.E. # 67, at 16 (mentioning "Flexjet's U.K. subsidiary Flairjet" and noting that "Flexjet LLC is the parent company of Flexjet Ltd., a U.K. subsidiary"). The only support the Court cited for this assertion is one sentence (unsupported with any citation to evidence) in the Union's Second Motion for Preliminary Injunction. D.E. # 47-1 at 16; *see also* Transcript, D.E. # 68, at 49:17-19. Setting aside that the Union's unsupported assertion should not bind Flexjet, the Court's finding that Flexjet is Flairjet's parent is another impermissible advisory opinion—particularly as the Court noted that "an injunction from this Court" on the Flairjet plane transfer issue is "unnecessary." Order, D.E. # 67, at 16. Accordingly, for the reasons discussed in this Section, the Companies will likely succeed on an appeal of these issues.

    (b)  *The Court lacked jurisdiction to interpret § 1.5(c)(4) (and other sections of the 2010 CBA).*

Just as the Court lacked jurisdiction to issue an advisory opinion regarding whether Flexjet is an "Affiliate" under the 2010 CBA, the Court also lacked jurisdiction to interpret the scope and meaning of § 1.5(c)(4) of the 2010 CBA. Indeed, the Court expressly noted that it did not have jurisdiction to do so. Order, D.E. # 67, at 15 n.80, 14-15 ("The parties agree that the arbitrator's Section 1.5(c)(4) jurisdiction gives the arbitrator power to decide which issues are "necessary" to integrate the Flexjet pilots into the 2010 CBA provisions, and to resolve that set of issues on the merits. <u>The Court agrees that it lacks jurisdiction over these issues and does not address them</u>."). Nevertheless, the Court interpreted § 1.5(c)(4):

- "It appears obvious that that the Section 1.5(c)(4) scope needs to be broad." (*Id.* at 14);
- "2010 CBA Section 1.2 makes the 2010 CBA provisions apply to Flexjet wages, hours, vacation, discipline, and other terms for the Flexjet pilots." (*Id.*)

10

- "No matter which issues the arbitrator deems 'necessary' to permit integration of the pilots, however, it is likely that there will be substantial overlap between that set of issues and the broader Section 6 disputes." (*Id.* at 15)
- "Thus, it is almost inevitable that the parties' Section 6 disputes will be addressed during Section 1.5(c)(4) negotiations and arbitration." (*Id.*)

For the reasons discussed above in Section III.A.2.a, these passing comments are dicta which the Court both lacked jurisdiction to issue and improperly issued as an advisory opinion, which could improperly influence the arbitrator's review in arbitration. Accordingly, the Companies are likely to succeed on appeal when they seek reversal of this advisory language.

> (c) *The Court misconstrued Section 6 by holding that the parties must bargain immediately.*

The RLA does not obligate parties bargaining under Section 6 to bargain immediately: instead, if requires that they exert every reasonable effort to make and maintain agreements. 45 U.S.C. § 152; *Chicago & N.W. Ry. v. United Transp. Union*, 402 U.S. 570, 574-75 (1971). Thus, the RLA does not require or contemplate reaching an agreement under a specific timetable, and it does not lay out the steps required to do. Each carrier's negotiation process is unique and non-formulaic, and new contracts can take years to finalize. Here, the Companies' § 1.5(c)(4) negotiations were a necessary step on the road to achieving a merger and then a new CBA: without an integrated CBA applicable to both Flexjet and Flight Options, the parties have no baseline from which to begin negotiating a new, amended CBA. Thus, the Order's requirement for the parties to hold dueling, concurrent negotiations is contrary to the RLA's requirements—in addition to the minor-dispute status of the parties' dispute over the propriety of bargaining first under § 1.5(c)(4). *See supra* Section III.A.2.b. Accordingly, the Companies are likely to succeed in their appeal of the injunction aspects of the Order.

> 3. <u>The Order does not contain express findings on three of the four preliminary injunction factors.</u>

The Court should stay the implementation of the injunction pending Sixth Circuit review because the Order only discusses the Union's purported likelihood of success on the merits and does not delve into the other four factors. *See Leary v. Daeschner*, 228 F.3d 729, 739 n.3 (6th Cir. 2000) (noting that it is "generally useful for the district court to analyze all four of the preliminary injunction factors, especially [because the Sixth Circuit's] analysis of one of the factors may differ somewhat from the district court's"). In any case, the facts found in the Order do not independently support a finding of irreparable harm. Furthermore, the Court improperly relied on pre-*eBay* case law to find that it could presume irreparable injury to the Union if an injunction were not entered. *See* Opening Appellate Brief at 57-59 (Ex. 1). For the reasons discussed in the Companies' appellate briefing, which they incorporate by reference, the Companies are likely to succeed on appeal because the Order is procedurally improper.

### 4. The Order did address the Norris-LaGuardia Act or meet its jurisdictional security bond requirement.

The Companies have previously briefed before both this Court and the Sixth Circuit why the Norris-LaGuardia Act applies to this case, bars the injunctive relief the Union has sought, and contains a jurisdictional requirement that a security bond support any injunction issued under the Norris-LaGuardia Act. Thus, the Court must require the Union to post a bond before any injunction the Court issues can take effect. Resp. to First Mot. for Prelim. Inj., D.E. # 13, at 37-38; Response to Motion for Contempt, D.E. # 54, at 8; Response to Second Mot. for Prelim. Inj., D.E. # 55, at 10-11; Opening Appellate Brief at 54-55, 60-63 (Ex. 1); Reply Appellate Brief at 25-28 (Ex. 2). The Companies incorporate this briefing by reference and note that the Order does not mention the Norris-LaGuardia Act, require the Union to post a security bond, or explain whether the Union met its burden to show that an injunction is not the least restrictive means of achieving the relief sought in their Motion for Preliminary Injunction. For these reasons, and for

the reasons stated in the Companies' previous briefing, the Companies are likely to succeed on appeal regarding this issue.

### B. The Companies will be irreparably harmed if the injunction is not stayed pending appeal.

The Order's findings pose irreparable harm if they are not stayed pending appeal. First, regarding the Order's contempt finding, the Order applied the NLRA's bad-faith bargaining standard to this RLA case, which harms the Companies because it does not properly focus on preserving commerce and conflates labor relations concepts under the NLRA and RLA. Moreover, the Court found that an integrated VSP contract existed and that the parties were required to sign it despite neither party's agreement on its terms.

Second, neither party asked the Court to find that Flexjet is an "Affiliate" under the CBA or that Flexjet is Flairjet's parent. The Court's conclusion forces substantial changes on Flexjet pilots' employment relationship—including rates of pay and other work rules—which neither they nor their representatives agreed to or negotiated. This abrupt change substantially (and negatively) impacts both the Companies and their pilots, and switching back to their current work rules and rates of pay at the end of a successful appeal would be similarly chaotic and difficult.

Similarly, the Court's observation that § 1.5(c)(4) "obviously needs to be broad" causes incalculable irreparable harm. The parties have heatedly debated how to interpret this section of the 2010 CBA, and their interest arbitration on this issue is in progress. The Court's advisory observations regarding how it would interpret § 1.5(c)(4) will harm the parties in arbitration, as the commentary of a federal judge may influence the arbitrator who has the exclusive rightful jurisdiction to interpret § 1.5(c)(4). The parties should be able to arbitrate this issue without this sword of Damocles hanging over them. While the Union will likely characterize the Court's

statements as mere dicta, dicta can be "considerable persuasive authority"—particularly here, as the arbitrator will interpret the 2010 CBA with the Court's (incorrect) observations about the meaning of the CBA easily available. *Grutter v. Bollinger*, 288 F.3d 732, 746 n.9 (6th Cir. 2002) (discussing Supreme Court dicta). Because damages flowing from these changes are difficult to quantify, staying the injunction pending appeal serves all parties' interests.

Finally, the Court's finding that the parties have an "immediate" duty to bargain under Section 6 while engaging in parallel § 1.5(c)(4) bargaining also causes irreparable harm. Because the parties have a short time to attempt to complete § 1.5(c)(4) bargaining before arbitration, diverting their resources from § 1.5(c)(4) negotiations may require interest arbitration of more areas than would be necessary if the parties could focus their resources on § 1.5(c)(4) negotiations. Furthermore, any bargaining done under Section 6 could prove fruitless if the Sixth Circuit reverses this Order (or the Order already on appeal): reversal would indicate that any bargaining would have occurred under incorrect conditions and circumstances and would ultimately waste both parties' time and resources. For these reasons, the Order causes irreparable harm that is difficult to quantify, and the Court should stay the Order pending appeal.

### C. A stay will not harm either the Union or Flexjet and Flight Options' pilots.

Staying the Order will not harm Flexjet and Flight Options pilots or the Union. Even without the Order, the parties have continued bargaining on all issues. Staying the Order's observations regarding the scope of § 1.5(c)(4) will benefit the Union and the pilots it represents, as a stay helps ensure a fair arbitration in front of an unbiased arbitrator. Finally, a stay will prohibit any harm which would arise from having to repeat Section 6 negotiations if the appeal revises interpretations or changes to the parties' Section 6 bargaining positions.

### D. The public interest favors a stay, and on balance, the factors weigh in favor of staying the injunction pending appeal.

14

The public has an interest in federal courts restricting their opinions to actual cases and controversies and not issuing advisory opinions on topics over which they lack jurisdiction. *See, e.g.*, Const. Art. III. Furthermore, staying the injunction pending appeal will comply with one of the "general purposes" of the RLA because a stay will help preserve an "orderly settlement of all disputes growing . . . out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Accordingly, the Court should find that the public interest weighs in favor of staying the Order pending appeal.

Furthermore, after weighing the four stay factors, the Court should conclude that staying the Order is appropriate. Not only are the Companies likely to prevail on appeal, a stay will prevent harm to both the parties and the pilots the Union represents. The Order requires repeated changes to the pilots' working conditions which, if undone when the Sixth Circuit issues its opinions on appeal, will harm the pilots if implemented and then withdrawn. Due to the likelihood of harm without a stay and the Companies' likelihood of success on appeal, the Court should find that, on balance, the factors favor staying the implementation of all aspects of the Order pending appeal.

## IV. **CONCLUSION**

For the foregoing reasons, the Court should stay the entire Order (D.E. # 67) pending appeal.

DATED: March 6, 2017                           Respectfully submitted,

                                                            OGLETREE, DEAKINS, NASH,
                                                            SMOAK & STEWART, P.C.

                                                            *s/ W. Chris Harrison*
                                                            W. Chris Harrison (Tenn. Bar No. 18689)

        (admitted *pro hac vice*)
Audrey M. Calkins (Tenn. Bar No. 30093)
        (admitted *pro hac vice*)
6410 Poplar Avenue, Suite 300
Memphis, Tennessee 38119
(901) 767-6160 – Telephone
(901) 767-7411 - Facsimile
chris.harrison@ogletreedeakins.com
audrey.calkins@ogletreedeakins.com

Bruce G. Hearey (0009087)
Robert C. Petrulis (0040947)
Thomas H. Barnard (0001569)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100 - Telephone
216.357.4733 - Facsimile
bruce.hearey@ogletreedeakins.com
robert.petrulis@ogletreedeakins.com
thomas.barnard@ogletreedeakins.com

ATTORNEYS FOR PLAINTIFFS/COUNTER-DEFENDANTS FLEXJET, LLC AND FLIGHT OPTIONS, LLC AND COUNTER-DEFENDANTS ONESKY FLIGHT, LLC AND FLIGHT OPTIONS HOLDINGS I, INC.

## CERTIFICATE OF COMPLIANCE

I certify that this Memorandum adheres to the length specifications in Local Rule 7.1(f).

*s/ W. Chris Harrison*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ W. Chris Harrison*
Chris Harrison

16