UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
_____

|  | : |  |
|---|---|---|
| FLIGHT OPTIONS, LLC and FLEXJET, LLC, | : : : | |
| Plaintiffs and Counter-Defendants, | : : | |
| v. | : : | No. 1:16-CV-00732 |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 1108; INTERNATIONAL BROTHERHOOD OF TEAMSTERS; and BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION, | : : : : : : | OPINION & ORDER [Resolving Docs. 73, 74] |
| Defendants and Counter-Plaintiffs. | : | |

_____

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On January 24, 2017, the Court granted in part and denied in part Counter-Plaintiffs International Brotherhood of Teamsters, et al. ("Pilots Union" or "Union") motion for contempt.[1] The Court also granted in part and denied in part Pilots Union's second motion for preliminary injunctive relief.[2]

On February 22, 2017, Counter-Defendants Flight Options, et al. ("Carriers") appealed the Court's order.[3] On March 6, 2017, Carriers filed a motion to stay the order pending appeal.[4]

On March 10, 2017, Counter-Plaintiffs Pilots Union filed a motion to clarify bond.[5]

For the reasons below, the Court **DENIES** Carriers' motion to stay and **ORDERS** that Pilots Union must post a $10,500 bond to make the injunction effective.

## I. Factual Background

On April 22, 2016, Counter-Plaintiffs Pilots Union filed a motion for a preliminary

---

[1] Doc. 67.
[2] *Id*.
[3] Doc. 72.
[4] Doc. 73. Pilots Union opposed. Doc. 75. Carriers replied. Doc 77.
[5] Doc. 74. Carriers responded. Doc 76.

Case No.1:16-CV-732
Gwin, J.

injunction and temporary restraining order against Counter-Defendants Carriers ("Carriers").[6] The lawsuit stems from pilot integration issues and collective bargaining issues after a merger between airline carriers Flight Options and Flexjets.

On May 25, 2016, this Court granted the preliminary injunction.[7] The Court ordered Carriers to accept the Pilots Union's integrated seniority list, rescind the voluntary separation package ("first VSP"), and bargain in good faith with the Counter-Plaintiffs Pilots Union.[8]

On June 8, 2016, Counter-Defendants Carriers appealed the Court's May 25 order.[9] Counter-Defendants' appeal is now pending before the Sixth Circuit.[10]

On October 28, 2016, the Court ordered Counter-Plaintiffs Pilots Union to post a $125,000 bond to cover any costs or damages Counter-Defendants Carriers may suffer should the Sixth Circuit find this Court improperly enjoined the Carriers.[11]

On October 25, 2016, Counter-Plaintiffs Pilots Union filed a motion to find Counter-Defendants Carriers in contempt for violating the preliminary injunction.

Pilots Union also moved for further temporary and preliminary injunctive relief.[12] The Union argued that the Carriers violated the original preliminary injunction by failing to rescind the first VSP and by failing to negotiate collective bargaining issues in good faith.[13] The Union requested further injunctive relief (1) requiring Carriers to bargain and (2) preventing Carriers from transferring certain aircraft abroad to one of their European subsidiaries.[14]

On January 24, 2017, the Court granted in part and denied in part Counter-Plaintiffs

---

[6] Doc. 10. Counter-Defendants opposed. Doc. 13. Counter-Plaintiffs replied Doc. 18.
[7] Doc. 33.
[8] *Id*. at 17.
[9] Doc. 40.
[10] The Sixth Circuit heard oral argument on February 1, 2017. Doc. 73 at 2.
[11] Doc. 51.
[12] Doc. 47. Brief in Support. Doc. 47-1. Carriers responded to the contempt argument, Doc. 54, and the request for further injunctive relief, Doc. 55. Pilots Union replied. Doc. 57. Carriers filed a surreply. Doc. 58-1.
[13] Doc. 47 at 1-2.
[14] *Id*. The Court acknowledges that Carriers dispute whether the European company is in fact a "subsidiary."

Case No.1:16-CV-732
Gwin, J.

Pilots Union's motion for contempt and granted in part and denied in part Pilots Union's motion for further injunctive relief.[15]

As to the contempt order, the Court denied Pilots Union's request to rescind the first VSP as to retired pilots because the Union withdrew their request.[16] The Court ordered the parties to finalize the new VSP they negotiated ("second VSP'").[17] The parties complied.[18]

As to the request for further injunctive relief, the Court ordered Carriers to bargain in good faith over Railway Labor Act ("RLA") Section 6 issues.[19] The Court found Pilots Union's request to prevent Carriers from transferring aircraft to Europe premature.[20]

On February 22, 2017, Counter-Defendant Carriers appealed the Court's order.[21] Counter-Defendants' appeal is now pending before the Sixth Circuit.

On March 6, 2017, Carriers filed a motion to stay the Court's order pending appeal.[22]

Carriers argue a stay is appropriate because the Sixth Circuit is likely to issue an opinion overturning the January 24 contempt order's underlying basis, the Court's May 25 order.[23] Carriers also argue that this Court should stay the January 25 preliminary injunction order because it contains advisory opinions that will skew the parties' arbitration process.[24]

Pilots Union argues that a stay is unwarranted because Carriers show neither likelihood of success on the merits nor irreparable injury if the case is not stayed.[25]

On March 10, 2017, Counter-Plaintiff Pilots Union filed a motion to clarify bond.[26]

---

[15] Doc. 67.
[16] *Id*. at 9.
[17] *Id.* at 11.
[18] *See* Doc. 71.
[19] *Id.* at 15.
[20] *Id*. at 16.
[21] Doc. 72.
[22] Doc. 73. Pilots Union opposed. Doc. 75. Carriers replied. Doc 77.
[23] Doc. 73 at 1.
[24] *Id.*
[25] Doc. 75 at 1.
[26] Doc. 74. Carriers responded. Doc 76.

3

Case No.1:16-CV-732
Gwin, J.

## II. Motion to Stay

Defendants "bear[ ] the burden of showing that the circumstances justify" staying a preliminary injunction pending appeal.[27] When deciding whether to stay an injunction, this Court considers similar factors to those considered when deciding whether an injunction should be ordered.

In deciding a motion to stay, courts consider: "(1) whether the [movant has] a likelihood of success on the merits; (2) whether they will suffer irreparable harm in the absence of a stay; (3) whether the requested injunctive relief will substantially injure other interested parties; and (4) where the public interest lies."[28] These factors "are not prerequisites that must be met, but interrelated considerations that must be balanced."[29]

### A. Success on the merits

As a preliminary matter, the Court addresses Carriers' contention that the January 24 order is littered with advisory opinions rising to reversible error. The argument is overblown.

For example, Carriers argue that the Court's reference to Counter-Defendants as "Carriers" is grounds for reversal because not all defendant companies fit the Railway Labor Act's ("RLA") definition of "Carriers."[30]

This Court refers to Counter-Defendants as "Carriers" for brevity, not to communicate the legal standing of each defendant company under the RLA. Shortening Defendants' names to "Carriers" is as insignificant as using the RLA acronym instead of the Act's full title.

---

[27] *Concerned Pastors for Soc. Action v. Khouri*, 844 F.3d 546, 548 (6th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).
[28] *Id*. (citing *Nken*, 556 U.S. at 434; *Ohio St. Conference of N.A.A.C.P. v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014); *Serv. Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012)).
[29] *Id*. at 548-549 (quoting *In re EPA*, 803 F.3d 804, 806 (6th Cir. 2015)).
[30] Doc. 73 at 4 n.1.

4

Case No.1:16-CV-732
Gwin, J.

Carriers also argue that the Court's reference to Flairjet as Flexjet's U.K. "subsidiary" is ripe for reversal because Flairjet is not their subsidiary.[31] The Court's word choice here is similarly insignificant.

The Union categorized Flairjet as Flexjet's subsidiary, and the Court used that language in its opinion.[32] But whether a parent-subsidiary relationship exists was irrelevant to the Court's decision. The Court found the question surrounding Flairjet premature, and no order was issued anyway.[33]

The purpose of appellate review of a preliminary injunction is to identify abuse of discretion,[34] not to police diction. This Court's vocabulary choices are not grounds for appeal.

With that in mind, the Court turns to why Counter-Plaintiffs Pilots Union are likely to succeed on appeal as to the Court's contempt and injunctive relief orders.

*Contempt*

Carriers argue the Sixth Circuit is likely to overturn the Court's May 25, 2016, order for three reasons. First, Carriers argue that they had no duty to bargain over a VSP before offering it to the pilots, and even if they did, the issue is a minor dispute for the arbitrator to decide.

Second, Carriers argue there was insufficient evidence that the parties reached a full agreement on the second VSP, and Carriers therefore were not in contempt for failing to memorialize an agreement.

Pilots Union responds that Carriers and the Pilots Union have already memorialized the new VSP and filed a joint voluntarily dismissal of that portion of this lawsuit.[35] The parties have

---

[31] *Id.* at 10; Doc 77 at 5.
[32] Doc. 67 at 16.
[33] *Id.* at 16-17.
[34] *Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 260–61 (6th Cir. 1977).
[35] Doc. 75 at 3-4; *see also* Doc. 71 (this Court's order granting the joint dismissal of the VSP-portion of the lawsuit).

5

Case No.1:16-CV-732
Gwin, J.

settled the VSP issue. Thus, the issue is no longer addressable here or on appeal.[36]

The Court agrees with this argument. The Court stands by its analysis in the May 25 injunction—Carriers were required to bargain over a VSP before issuing it to pilots.[37] But the issue is now moot. After negotiations following this Court's VSP finding, the parties reached a new VSP agreement and memorialized it.[38] Having negotiated an agreement on the VSP, the parties stipulated to a dismissal of the VSP-portion of this lawsuit.[39] Carriers are therefore unlikely to succeed on appeal. The issue has gone away.

Third, Carriers argue that the Court issued an advisory opinion as to Carriers' failure to rescind the first VSP for retired pilots. Pilots Union initially requested a contempt finding but later withdrew the request.[40] While the Court found that Carriers' failure to rescind the agreements likely violated the May 25 order, it denied Pilots Union's request as moot.[41]

Pilots Union responds that because the Court did not in fact find Carriers in contempt, there is nothing to appeal.[42]

The Supreme Court counsels courts against issuing advisory opinions.[43] Such a rule exists to prevent "an opinion advising what the law would be upon a hypothetical state of facts."[44] But here, no hypothetical was involved.

Although the remedy issue was moot because the Union recognized the logistical difficulties in withdrawing pilots' retirement benefits, whether Carriers violated the Court's initial injunction was a "definite and concrete" legal question.[45]

---

[36] Carriers argue that whether they violated the Court's May 25 injunction is still ripe for appeal. Doc. 77 at 6.
[37] Doc. 33 at 14-16.
[38] Doc. 67 at 10-11.
[39] Doc. 71.
[40] Doc. 67 at 8-9.
[41] *Id.*
[42] Doc. 75 at 3.
[43] *North Carolina v. Rice*, 404 U.S. 244, 246 (U.S. 1971).
[44] *Id.* (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241 (1937)).
[45] *Id.*

6

Case No.1:16-CV-732
Gwin, J.

Furthermore, the Court's conclusion that Carriers violated the order is immaterial. Because the Court did not find Carriers in contempt, no adverse order exists. Carriers' "likelihood of success on the merits" is immaterial—any remedy from a successful appeal would be futile.

### *Further Injunctive Relief*

Carriers argue that the Sixth Circuit will likely reverse this Court's order to bargain because it contains three advisory opinions on minor disputes over which this Court lacks jurisdiction.[46] Specifically, Carriers argue that the following are minor disputes: (1) whether Flexjet is an "Affiliate" of Flight Options under the 2010 Collective Bargaining Agreement ("CBA"); (2) the scope of § 1.5(c)(4) of the 2010 CBA in relation to RLA Section 6; and (3) whether § 1.5(c)(4) issues must be resolved before RLA Section 6 bargaining.[47] Carriers' central concern is that the Court's order will have undue influence over the arbitration process.

Pilots Union responds that the Court simply fulfilled its preliminary role in determining which disputes are arbitrable, and making that determination required interpreting contractual provisions.[48] The Union goes on to state that "nonbinding dicta is not the basis for judicial relief in the form of an 'emergency' stay in any case."[49]

In its January 24 order, the Court presented its best understanding of the contractual landscape operating in this case.[50] The Pilots Union claimed that the Section 1.5 of the 2010 Collective Bargaining Agreement needed to be broadly read to give the Pilots Union authority to bargain about all issues in both the Section 1.5 bargaining and the Section 6 bargaining.

---

[46] Doc. 73 at 8. Carriers also argue that the Court was wrong on the merits for each of these three determinations.
[47] *Id*. at 8.
[48] Doc. 75 at 6.
[49] *Id.* at 4-6.
[50] Doc. 67 at 12-15.

7

Case No.1:16-CV-732
Gwin, J.

The Court acknowledged—both at that time[51] and again here—that the analysis involved certain minor contractual disputes that the arbitrator will ultimately resolve. The arbitrator is under no obligation to implement the Court's understanding of the contractual landscape.

The Court also notes that whether a stay is granted here is largely irrelevant to Carriers' central concern. The Court's opinion is on the record—staying the decision has no impact on whether the arbitrator considers the Court's analysis worthwhile or not.

Next, Carriers argue they will succeed on appeal because the Court did not make express findings on three of the four preliminary injunction factors in its January 24 order.[52]

While it is "generally useful" to make specific findings on each of the four factors, it is not required.[53] Carriers' argument is therefore unlikely to succeed on appeal.

Last, Carriers argue that the Court's order violates the Norris-LaGuardia Act, in part by failing to require Pilots Union to post a security bond.[54] The Court addresses bond in Section III.

### B. Irreparable harm

Carriers argue they will suffer irreparable harm if the Court's order is implemented, including (1) implementation of a VSP the parties never agreed to; (2) dramatic changes in employment relationships based on the Court's allegedly advisory opinions; (3) undue influence over the parties' arbitration process; and (4) wasted resources.[55]

Pilots Union responds that no harm—"much less *irreparable* harm"—will occur.[56] The Union argues (1) the VSP issue is moot; (2) the Court's interpretation of employment

---

[51] *Id.* at 12 n.64 ("The Court acknowledges that much of the following analysis deals with interpreting the 2010 CBA, a minor dispute over which the arbitrator has jurisdiction. However, the Court finds it helpful to explain its understanding of the operative contractual framework before addressing the difference between Section 1.5(c)(4) and RLA Section 6 negotiations.").
[52] Doc. 73 at 11-12.
[53] *See Leary v. Daechener*, 228 F.3d 729, 739 n.3 (6th Cir. 2000).
[54] Doc. 73 at 12.
[55] Doc. 73 at 13-14.
[56] Doc. 75 at 10 (emphasis in original).

8

relationships is nonbinding and no employment changes are occurring; (3) the arbitrator need not consider the Court's reasoning; and (4) no resources will be wasted where Carriers are required to bargain over both § 1.5(c)(4) and RLA Section 6 issues.[57]

The Court agrees with Pilots Union on each point.

First, as discussed above, the parties' voluntary joint dismissal of the VSP portion of the lawsuit makes it irrelevant here.

Second, the Court has acknowledged—multiples times—that its 2010 CBA analysis is nonbinding. Thus, the Court's order requires no "substantial changes" in any employment relationships.

Third, as stated above, the arbitrator is not bound to follow the Court's analysis of the contractual landscape.

Last, Carriers will waste no resources by engaging in Section 6 bargaining. Carriers are statutorily required to bargain with Pilots Union over a new CBA.

Once one party makes a new RLA Section 6 proposal after the old CBA has expired, the RLA bargaining process begins.[58] The Union filed a Section 6 notice in February 2016, triggering this process.[59]

Within "ten days after the receipt of said notice," the parties must designate a time to meet and bargain.[60] The designated meeting must be within 30 days of receipt of the notice.[61]

Thus, Carriers have been under a statutory obligation to bargain with Pilots Union over a new CBA for a year, regardless of Carriers' preference to dispose of § 1.5(c)(4) issues first.

Accordingly, Carriers will not suffer irreparable harm if the motion to stay is denied.

---

[57] Doc. 75 at 9-12.
[58] *Wheeling & Lake Erie Ry. Co. v. Bhd. of Locomotive Eng. & Trainmen*, 789 F.3d 681, 690–91 (6th Cir. 2015).
[59] Doc. 47-1 at 30.
[60] 45 U.S.C. § 156.
[61] *Id*.

9

Case No.1:16-CV-732
Gwin, J.

### C. Substantial injury

Carriers argue a stay will help rather than harm Pilots Union by ensuring fair arbitration and preventing potentially repetitive negotiations.[62]

Pilots Union argues that if Carriers do not bargain in good faith with the Union,[63] substantial harm will occur. Pilots Union reasons that RLA Section 6 requires good-faith bargaining according to a strict time-table.[64] Failure to bargain causes pilots irreparable injury by withholding a new collective bargaining agreement that would offer various protections.

Carriers' arguments lose. First, arbitration will not be unduly influenced. The Court trusts that the arbitrator will follow only those portions of the Court's order that are binding and come to his own conclusions.

Second, no resources will be wasted in negotiation. Carriers insist on first addressing Section 1.5(c)(4) issues to facilitate the merger. Carriers also have a statutory duty to bargain over Section 6 issues. All fruits of negotiation will fall into one category or the other. Thus, no time will be wasted.

Carriers have a statutory obligation to come to the table and bargain over a new CBA now. Pushing this process further down the road puts the pilots at a disadvantage and violates their collective bargaining rights.

Accordingly, Pilots Union would bear the brunt of any injury from a stay.

---

[62] Doc. 73 at 14.
[63] Counter-Plaintiffs Pilots Union argues correctly that the Court's January 24 order required two things of Carriers: (1) to memorialize the VSP; and (2) bargain with Pilots Union in good faith. Pilots Union reasons that because the VSP-portion of the lawsuit has been dismissed, only good-faith bargaining is left to consider.
[64] Doc. 75 at 12 -13.

10

Case No.1:16-CV-732
Gwin, J.

### D. Public interest

Carriers argue that the public interest supports a stay because advisory opinions are generally prohibited.[65] Pilots Union responds that private interests are the central issue here, but a stay defies the public interest because it may disrupt the transportation system.[66]

This case primarily concerns private interests, and any public interest supports the Union. The public is better served by continuing negotiation between the parties for a new CBA—a goal the Railway Labor Act shepherds in a timely manner.[67]

### III. Motion to Clarify Bond

"[T]he amount of a security bond rests in the sound discretion of the district court."[68] Federal Rule of Civil Procedures 65(c) and the Norris-LaGuardia Act inform bond imposition in this case. Under the Federal Rules, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

The Norris-LaGuardia Act provides:

> No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief

---

[65] Doc. 73 at 15.
[66] Doc. 75 at 14.
[67] 45 U.S.C.A. § 156 (establishing the timeline for negotiations following a new Section 6 proposal).
[68] *Div. No. 1, Detroit, Bhd. of Locomotive Engineers v. Consol. Rail Corp.*, 844 F.2d 1218, 1226 (6th Cir. 1988) (citing *Roth v. Bank of Commonwealth,* 583 F.2d 527 (6th Cir. 1978); *Urbain v. Knapp Mfg. Co.,* 217 F.2d 810, 815 (6th Cir. 1954)).

11

Case No.1:16-CV-732
Gwin, J.

> sought in the same proceeding and subsequently denied by the court.[69]

Pilots Union argues that the amount previously posted for the first preliminary injunction—$125,000—is sufficient bond to support both injunctions, such that no further bond is necessary.[70]

Defendant Carriers respond that Pilots Union should post an additional $100,000 bond to cover fees and costs associated with contesting the second preliminary injunction.[71]

The Court finds Carriers' request unreasonable. Counter-Plaintiffs Pilots Union's motion for injunctive relief sought to bring Carriers to the bargaining table. As Carriers had a statutory duty to come to the table,[72] no injunctive relief should have been necessary.

Under the statutory framework, Carriers were required to bargain over RLA Section 6 issues throughout the pendency of Pilots Union's motion.[73] In fact, while defending against Pilots Union's motion, Carriers *agreed* that the old CBA was "open generally for negotiations."[74]

Counter-Defendants Carriers were unreasonable to dedicate any attorney resources to this issue as Carriers should have been bargaining over the Union's new Section 6 proposal all along. The Court reiterates its previous analysis—RLA Section 6 and 2010 CBA § 1.5(c)(4) issues likely overlap, so bargaining over both simultaneously is not a steep requirement.

Because Carriers should have been bargaining over Section 6 issues, the Court will not look to attorney fees spent defending that question in setting bond.

---

[69] 29 U.S.C.A. § 107(e). The main distinction between Fed. Rule Civ. P. 26(c) and the Norris-LaGuardia Act is that the latter requires the Court to consider attorney fees in setting bond.
[70] Doc. 74-1.
[71] Doc 76 at 4-9.
[72] *See supra* at 8-9 (explaining statutory framework requiring Carriers to bargain under Section 6 of the RLA).
[73] Pilots Union made a new Section 6 proposal in February 2016. According to the RLA, the parties were required to set a time to negotiate within 10 days of the notice, and meet within 30 days. Pilots Union filed its motion for injunctive relief on October 25, 2016.
[74] Doc. 55 at 2.

12

In their motion for injunctive relief, Pilots Union also requested that the Court forbid Carriers from transferring certain aircraft to Europe. While the Court found this request premature, the Court acknowledges that Counter-Defendants Carriers were required to expend time and resources defending that issue.

Carriers estimate that they spent approximately 301.9 hours—costing $111,385.45—[75] in litigating Pilots Union's second preliminary injunction. Carriers did not submit itemized billing in support of that estimate.

The Court estimates that time spent on the aircraft transfer portion of the Union's motion would have been minimal compared to time spent on the bargaining issue.

It was reasonable to spend approximately 30 hours litigating the aircraft transfer issue. At a reasonable hourly rate of $350 per hour,[76] the Court requires an additional bond in the amount of $10,500.

### IV.    Conclusion

For the reasons above, the Court **DENIES** Carriers' motion to stay and **ORDERS** Pilots Union to post a $10,500 bond.

IT IS SO ORDERED.

Dated:  March 30, 2017           s/    *James S. Gwin*
         JAMES S. GWIN
         UNITED STATES DISTRICT JUDGE

---

[75] Doc. 76-1 at ¶ 14.

[76] Carriers submit that two shareholders, one of counsel, and two associates dedicated time to defending the injunction. *Id*. at 1-3. Their average hourly rate in 2016 was $397 hour (Harrison, $390; Hearey, $485; Barnard, $525; Calkins, $310; Hoyt, $275). *Id*. The Court finds that a reasonable hourly rate for work on this relatively straightforward issue is $350 per hour.  *See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (finding a reasonable rate to be "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record"); *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (citing *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000)) (allowing courts to adjust the basic lodestar fee based on certain factors including difficulty of the issues and requisite skill).